We're here today because the IRS is seeking to compel testimony from my clients, the appellants George and Cookie Pate, against their will and against their assertion of their Fifth Amendment rights to be free from making statements that may be used in a criminal proceeding. The relevant facts are these. The summons at issue was issued by a revenue officer who is assigned to collecting outstanding tax liabilities owed by Mr. and Mrs. Pate. The revenue officer has on the record admitted that he is seeking to establish alter ego nominee liens. And what that means is the IRS can then file a lien against another person or another entity and then go after that entity or that person to collect the tax liabilities. Underlying those liens is an argument that must be made by the revenue officer that the taxpayer has intentionally put assets into those alter egos or nominees in order to evade collection. And that's where the fear of self-incrimination comes in, in this case, because if you look at the statute 26 U.S.C. 7203 under the Internal Revenue Code, that statute exists. It's a criminal statute which provides that by willfully failing to pay over taxes that are owed to the United States, one can be criminally prosecuted. And if you follow the logic of establishing alter ego nominee liens and the facts that underlie that analysis, there is certainly a link in the causal chain of being able to establish then that someone has committed a crime under 7203. And I think the errors that were committed by the lower court in their decision were that, number one, I think the court put too much weight on the stage of the proceeding in the report and recommendation issued by the magistrate judge, which was ultimately adopted by the district court. The magistrate judge actually said, at the petition to enforce the IRS summons stage of these proceedings, the pates can show no real and appreciable fear of self-incrimination. The word can there, I think, is critical. Because that says to me that in no circumstances can anyone at that stage of the proceedings assert their Fifth Amendment right and those rights be upheld, which I think is totally erroneous as a matter of law. The stage of the proceedings is not what's relevant. What's relevant is whether or not the taxpayer has a real and appreciable fear of self-incrimination. And I think the test is- Do you think the real problem would be if your clients asserted a blanket assertion at every question? Well, it's interesting, your honor. The government makes a big deal about that. What I find interesting, and it's a little perplexing and somewhat disingenuous, not to use too many adjectives there. But in their papers in the lower court, they tried to say that my clients waived their Fifth Amendment rights by submitting a 433A, which is a collection information statement, back in 2013. So- If you look at that, you cited page 16 of the appendix on 3 for that proposition. But if you look at the argument carefully, what they're really saying is that your man refused to answer some of the same questions that he previously answered in the form 433A. That's a narrower argument than what you're attributing to the government. They're saying, you already answered these same questions on one form. You can't now go and privilege us to those same questions on another form. That's different from saying, if you answer one question, you waive it for all questions. I don't know. I didn't understand that it's brief to argue that. Okay. And I think the concern here is your people saying they wouldn't answer their name and their address and so forth, and didn't limit the invocation to questions that might reasonably, as you put it, get how you put it exactly. But I think your point was, if the question could possibly be part of the chain toward criminal liability, then they could claim the privilege. But how can you justify invoking it as to all questions? The reason that I think it's justifiable is because there are cases out there that clearly say, you know, you can't selectively assert the Fifth Amendment, right? So, you know, for instance, Lois Lerner, when she testified before Congress, there was a whole big hoopla over whether or not she waived the Fifth because she made an opening statement. There was talk of, you know, holding her in criminal contempt. And so, from my perspective, ultimately, I believe they found she did not waive it. But I guess my point is, to be safe in that situation, you know, background here, which is laid out in the briefs, I mean, my clients, they're natives of India. They've immigrated here. They're U.S. citizens. Not a great command of the English language. In that setting, before a revenue officer, the safest approach, in my view, was to assert the Fifth Amendment throughout the proceeding. And I don't think a blanket assertion- Did they have counsel in the meeting? They did, yes. Counsel had the command of English, I assume. I do, yes. Well, I guess my point is- They had a point about the command of English and why that would make a blanket indication. For them to- Counsel was there to say, you can answer your name. Sure, yeah. And perhaps I should have done that. But I guess the bigger picture to me is, that's not even information the IRS really needs. They have that information. And so, the issue here is, what poses a criminal threat of prosecution here? Are you arguing- Excuse me, sir. Sure. Are you arguing that the IRS already had the answers to all the questions that were put to these taxpayers? Not all. Well, not all of the questions, because some of the questions, you know, it's asking for current information regarding income and assets and how you spend your money. So, I guess my point is just, if we're going to argue about the preliminary questions that were, you know, this blanket assertion notion, well, I would submit that the answers that arguably wouldn't have had any sort of criminal risk was information the government already had. Everything else, to me, totally proper to assert the Fifth Amendment. It could have furnished the causal link in the chain of a criminal prosecution. And I think, also, I think it's important to note the IRS's position here, which is, we have to have this testimony. It's essential that we get this testimony. Well, that's just simply not the case. If you want to go get alter ego nominee liens, you know, there's a negative inference in the civil context by asserting the Fifth Amendment right. To me, that's something, I don't know what the revenue officer in this case has done, as far as his investigation or other information. And I think, to what I consider trampled someone's Fifth Amendment rights to be free from making statements that could be self-incriminating, I think we have to look at, you know, what are the alternatives for the IRS? Which is a little bit of a nuanced argument, not something that's been addressed. And I will touch on the cases that are cited. I would like this court to find, to reverse the lower court and deny enforcement of the summonses. I don't think that remanding and going on a question-by-question basis, based on the facts in this case, which I think are very unique compared to every other opinion that exists out there, especially in the Eighth Circuit, the Norwood case dealt exclusively with a taxpayer who was refusing to turn over documents. We're not arguing that the refusal, you know, we're not saying that there's a Fifth Amendment right to refuse to produce documents that already exist. This particular summons dealt only with testimony, which is really important. It's not, we're not refusing to turn over documents. We're not refusing to appear. The Teeple case, which is relied on, also Eighth Circuit, dealt with a tax protester. I think the Justice Department refers to them now as tax defiers, because it's less noble. But, I mean, these are cases that, pretty much all of the cases, I haven't found anything that's on point as far as a limited summons, asking for testimony, where a revenue officer is on the record, seeking alter ego nominee liens, who's on the record as previously trying to refer the taxpayer for criminal prosecution. Well, is that really what happened? Didn't the revenue officer actually go to the technical advisor? He didn't pursue the normal path to refer, or the required path to refer this for criminal prosecution? Let me just say, there are many inconsistencies with this revenue officer's testimony. But I think what he clearly did, and I think the lower court found, was that he had made an effort to go to his supervisor to have the case referred for a criminal investigation. And I think he did as much as he could do in his role as a revenue officer to try to have Mr. Pate criminally prosecuted. And doesn't that also go to the issue of whether or not he was hostile, and how that plays into the invocation of the Fifth? Well, certainly as an attorney, if you're advising a client and you experience someone who has admitted to you that when you ask, as any good tax practitioner would, is my client under criminal investigation? And they respond, no, not yet, which I understand he disputes. But I firmly believe that's what he said. And then also, the hostility in terms of serving him with the summons, again, when we show up at the hearing, serving him with another one at his house when he learns that he's going to be subpoenaed to testify at the show cause hearing. So in my view, this person clearly has it out for the taxpayer. And anything that my client says to him during a testimonial setting could be used, contorted, whatever word you want to use, to then seek that criminal prosecution. And so from my standpoint, based on all the facts, all the circumstances, the statements he's made, it was completely legitimate for my clients to have a real and appreciable fear of self-incrimination in order to assert their Fifth Amendment rights. And I'd like to save the time I have left for rebuttal, if that's all right with the court. Thank you. Thank you, Your Honors. May it please the court. This court's precedent has unequivocally held, sorry, has unequivocally held for almost 50 years that taxpayers cannot, in response to an IRS summons, do what they did, which is invoke the Fifth Amendment as to each and every question that was presented to them, 40-some-odd questions each. There were specific questions that they wished to raise the Fifth Amendment in regards to. They should have done so, presented that evidence to the district court. The district court here held an evidentiary hearing. Opposing counsel has argued a lot of facts today. However, the district court, the magistrate judge heard live testimony. Trial courts are vested with the expertise in making factual credibility determinations. And as we put it out in our brief, I see no points of clear error that they've even argued in specific factual determinations. They may not like the factual determinations that the trial court made here. However, as far as clear error, it's not there. This was the role of the trial court. Also, in his reply brief, I'm sorry. Can you again, doesn't this become sort of silly, if you go back to when, state your name, yes, they've got to answer that, some pedigree information, where are the assets? At that point, aren't they going to be able to come up with that? So our position, which we state in our brief, footnote 9 on page 26, is that any argument they could have raised as to those 47 questions, 49 questions to Mr. Pate or 47 questions to Ms. Pate, they should have raised at the previous hearing. If there was a specific basis to invoke for that question, they should have raised it. The trial court has already had its evidentiary hearing. Race judicata applies just like every other proceeding. That's what we relied on the Olson case for, which says race judicata applies in this kind of context, because the government is concerned about a merry-go-round effect here. We don't want district courts to have to deal with this over and over again, that it becomes some kind of game, like you said, because it can't be that they go back and then the questions that they've already had a chance to present argument to and evidence to before the trial court then say, well, we didn't argue this before, but now we're going to give you a specific basis on which to assert the fifth as to this question. And as to follow-up questions, our position would be that they could make any argument that would be temporally new, but they couldn't make the same arguments that they made before that the district courts already ruled on, which is that Officer Boston is grouchy and doesn't like us, that- As far as the blanket assertion, the magistrate judge also had a broader rationale that they didn't even have a reasonable fear of a liability. Right, and that's based on the- But suppose the court doesn't agree with that. If the court doesn't agree with that, that's based, that, it would depend on the reason that this court didn't agree with that. If it was because the court read the magistrate judge's opinion the way that is read by the government reason to say that if it's just, it's the stage of proceedings, I don't think that that's what the findings of fact support. The findings of fact show that the magistrate judge looked at all the testimony and that there was no evidence presented by the other side, only the government's revenue officer was the only evidence that was put forward by the Pates regarding their fear of prosecution. He denied making the statements that counsel and argument claimed he made. So as far as these other arguments, factual arguments that counsel makes today, for example, about the limited command of English language, if he wanted that to be a fact before this court, he should have put that fact in before the district court, which was the proper place to do it. The district court took the time here to have a magistrate hold the evidentiary hearing and that should be respected. As Judge pointed out, this can't be an exercise in futility that's just a merry-go-round effect. The Supreme Court has held that these summonses are not accusatory in nature. They are to inquire. The tax system requires disclosure of information. That's how our tax system works, is voluntary disclosure of information. You have to report criminally earned income. We all know all these basic things. There's nothing nefarious about seeking this information to collect taxes. There's no Fifth Amendment right against having a tax lien filed against a nominee corporation. If that's the argument that counsel had wanted to make as to a specific question, he should have made that before the district court. All of the cases from the Supreme Court back to the 50s say that it needs to be an individualized question and that you don't have to obviously explain your criminal activity or what it specifically is, but there has to be an evident basis for the trial judge to make a decision. And here, the only facts we have on the record say the only thing that Revenue Officer Boston did, which is what any officer should do, is look at everything in the case, speak to advisors in your office, and to see whether or not something should be pursued. He never even went so far as to formally pursue a criminal referral at all in this case. Tax collection, having taxes collected from you, is not a criminal enterprise. Their reading of these statutes basically makes it where anything you could come up with. But it doesn't have to be a criminal referral, does it? I mean, the taxpayer doesn't have to hand that case to them. No, that's definitely true. There does not have to be a criminal referral, and I think that's the reading of the magistrate judge's opinion that is problematic, right? There does not have to be a criminal referral to have a reasonable fear of prosecution. We could come up today with 50, 60, hundreds of hypotheticals of why you might not want to answer these questions. It might not be even in the tax context, right, that you could have a reason not to answer a question because it could be a causal link. But that's why what the taxpayers did here is so wrong. It has to be a specific question. That's the only way the Supreme Court's analysis works in this context, is to have a specific question, to look at it, and to give that to the trial court. The trial courts are very experienced in handling these nuanced, factual situations, especially in protecting Fifth Amendment rights. They do it in grand jury situations. They do it regularly. That is the problem with the way this case is before this court, is this blanket invocation has created a situation where we don't have that information. So why shouldn't we just send it back for a question by question? Because they already had the opportunity to do that. Your Honor, they had competent counsel, and this court has held since the 60s that you cannot do this. He even said at the hearing, well, maybe I shouldn't have done that. But at the hearing, then, he should have focused his analysis on one or two questions or three questions, whatever it is, out of that list of 40-some-odd for each taxpayer. It's a waste of time in the district court. That shows that, if you're right, that shows not a proper invocation. But why does that preclude him from making a proper invocation on remand? I'm not following this race judicata. The race judicata argument is— It was a case where the person hadn't appealed the original enforcement order, as I recall. Right, but he— You didn't appeal the order. You can't now argue it in a subsequent hearing, or is it? Well, here, the argument is, well, you had—the trial court had the hearing. You had the opportunity to present any evidence you wanted, ask any specific questions. Here's the evidence you presented. The trial court made its decision based on that. Why should the trial court go back and do it again, just on this basis? This would just become a—could become a merry-go-round again and again, wasting district court's time. These summonses are routine—as the Supreme Court said recently in Clark, these are routine matters that just require a very small showing of the meeting of the Powell factors, and then we move on from there. These are not—these are not accusatory. You can read the tax statutes, willful evasion, and failure to make a statement, very, very broadly. Absolutely, we have it attached to our appendix. And many of them are completely, in my view, innocuous. Maybe there is some reason that, you know, I'm not going to speculate or have hypotheticals about specific questions of why they would have a reason to invoke the Fifth Amendment because, I mean, a law school exam, you could come up with anything on those type of hypotheticals. But there were 47 and 49 questions asked to each taxpayer. They were attached in the district court, and, you know, there were no specific questions that were pointed to at all by the taxpayers in the district court as being problematic. It was that it had to be this broad assertion. If you have any further questions, I'd like to answer them. Otherwise, we would ask that the district court's decision be affirmed. Thank you. Thank you, Your Honor. Well, Your Honor, I don't think that was our obligation at that stage. I mean, we were the respondent. Well, Your Honor, prior to the report and recommendation, there was no indication that the way that the Fifth Amendment was invoked was improper. And in our objection to the report and recommendation, we actually suggested that the court consider allowing us to have an ex parte, in-camera review of our concerns if that's the direction the court was going to head. And that was not addressed in the district court's adoption of the R&R. So it wasn't something that respondents, appellants now weren't willing to do or didn't raise. It wasn't raised at the hearing because, frankly, it never really came up, I guess, in the sense of that being an option with the court. Perhaps we could have suggested that. But I think the court, if it was interested in doing that, could have taken it on its own volition to do that if it was concerned about this blanket assertion. Having seen a fair amount of case law, and I suspect you did, that went into this hearing that included having a blanket assertion, why don't you at least point to some questions that you were aware of the accidents question, how did you hide these, things like that? Two reasons. Number one, because of the case law out there that says you can't selectively answer questions and you could waive your Fifth Amendment right by doing that. That was my interpretation of the law. My interpretation of the government's briefs regarding the 438 previously submitted was that they would argue that you can't selectively waive your Fifth. And I do. I'm curious. I think the government would come back in here and say, well, you answered some of these questions. You asserted your Fifth with respect to others. You've waived your Fifth Amendment. Now we're going to ask the court to have you answer everything. I mean, it's a real Hobson's choice. They might argue that. I guess the question is whether that's a sound argument. And I think- I can understand your point. The council's in a delicate situation, but there's also a law that says blanket indication. And from my view, it wasn't a blanket indication. A blanket indication would be, I'm not showing up. I'm asserting my Fifth Amendment right. I'm not going to be there. They showed up. They answered every question. That, to me, while they- and in the court's opinion, they said the taxpayers refused to answer. That's not true. They answered with the invocation of the Fifth Amendment. That's a different situation than someone who says, I'm not showing up. I'm not appearing. I'm not producing documents. And that's what some of these cases talk about when they talk about a blanket assertion. There isn't, to me, a clearly defined- blanket assertion is not clearly defined in the cases that are out there. And just a couple points, if I may, with the time I have left. In terms of the legal errors, the legal error, which I think we laid out pretty clearly, was that the court placed this undue emphasis on the lack of a DOJ referral. Under 7602 of the code, that is a statutory prohibition. The IRS cannot seek enforcement of a summons. The court cannot order enforcement of a summons if there's been a criminal referral made. It's really irrelevant to the issue of whether or not the taxpayers have a reasonable fear of self-incrimination. The second piece, as I said earlier, is this notion that, quote, the pates can show no real and appreciable danger at the summons enforcement stage. Well, that's simply not accurate. And it's not consistent with Cohen in the Eighth Circuit, which basically says that the stage of the proceeding is meaningless. So those are two areas of law right there. And I think a third area of law, sort of mixed with fact, is overlooking 7203 as a real threat for criminal prosecution based on what the IRS was seeking, which was this alter ego nominee lien. And prosecutors have tremendous discretion in cases they bring. 7203 is very broad. Certainly, a case could be made that if there are facts to support alter ego nominee liens, that a criminal prosecutor could bring a case under 7203. I don't see how that can be disputed. This isn't a game. This is serious. Taxpayers have a real threat of criminal prosecution if they're forced to give testimony about their assets and their liabilities. So we would ask the court, rather than go through this merry-go-round exercise of going back to the lower court, acknowledge that the real questions the IRS wants answers to have to do with their assets. And those do present Fifth Amendment concerns. The Fifth Amendment was properly invoked. And I would ask the court, deny the summons at issue. All right. Thank you for your argument. Thank you. Case is submitted. And the court will follow the opinion of the three courts.